Eric M. Poulin
CA State Bar No. 298476
Roy T. Willey, IV (*pro hac vice forthcoming*)
Blake G. Abbott (*pro hac vice forthcoming*)
**Anastopoulo Law Firm, LLC**
32 Ann Street
Charleston, SC 29403
P: (843) 614-8888
F: (843) 494-5536
Email: eric@akimlawfirm.com
        roy@akimlawfirm.com
        blake@akimlawfirm.com

John C. Bohren
CA State Bar No. 295292
**Bohren Law APC**
501 W. Broadway Suite 800
San Diego, CA 92101
Tel: (619) 433-2803
Email: yanni@bohrenlaw.com
**Attorneys for Plaintiff and
the Proposed Class**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEKHA ABDALLA, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, AND GEICO GENERAL INSURANCE COMPANY,<br><br>　　　　　　Defendants. | Case No.: **'21 CV 0621 MMA DEB**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Shekha Abdalla ("Plaintiff") by and through undersigned counsel brings this action against GEICO Casualty Company, GEICO Indemnity Company and GEICO General Insurance Company ("Defendants" or "GEICO") on behalf of herself and all others similarly

1

situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

1. Plaintiff brings this case as a result of GEICO's unfair profiting from the global COVID-19 pandemic.

2. Beginning in March 2020, states across the country, including California, began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3. While many companies, industries and individuals have suffered as a result of the COVID-19 pandemic, GEICO scored a windfall. Not surprisingly, as a result of state-wide and nation-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents. As a result of this decrease in driving and accidents, the premiums charged by GEICO during the COVID-19 pandemic, are unconscionably excessive.

4. Despite full knowledge of these facts, GEICO has continued to charge and collect excessive premiums, and has failed to issue adequate refunds. The company's "GEICO Giveback" program is woefully inadequate to compensate for the excessive premiums that customers have paid as a result of COVID-19. The program applies a 15% discount on new and renewal auto insurance policies only. It does not apply to the premiums that the customer has already paid or will continue to pay on policies already existing at the start of the COVID-19 pandemic in spite of GEICO's statement to the contrary. And even with respect to new and renewal policies, the 15% credit falls well short of an adequate return of premiums.

5.     This action seeks disgorgement of ill-gotten gains obtained by GEICO to the detriment of its customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

## PARTIES

6.     Defendant GEICO Casualty Company is a Maryland corporation with its principal place of business in Chevy Chase, Maryland.

7.     Defendant GEICO Indemnity Company is a Maryland corporation with its principal place of business in Chevy Chase, Maryland.

8.     Defendant GEICO General Insurance Company is a Maryland corporation with its principal place of business in Chevy Chase, Maryland.

9.     Plaintiff Shekha Abdalla is an individual and resident and citizen of the state of California and held a personal auto insurance policy purchased from GEICO during the time period relevant to this lawsuit.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Defendants because Defendants conduct business in California and have sufficient minimum contacts with California.

12.     Venue is proper in this District under 28 U.S.C. § 1391(d) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

13.    Plaintiff was a GEICO auto insurance policy holder during the time period relevant to this lawsuit.

14.    On March 4, 2020, Governor Gavin Newsom proclaimed a State of Emergency in California as a result of COVID-19.  In the following weeks, the state rolled out a series of social distancing measures.

15.    On March 19, 2020, Governor Newsom instituted a statewide stay-at-home order[1], making California among the first states to establish such an order.   With some exceptions, the order mandated "all individuals living in the State of California to stay home."[2]

16.    In the time since Governor Newsom first instituted the stay-at-home order, California's progress toward reopening has been halting, and additional stay-at-home orders have been imposed in response to the spread of COVID cases.

17.    Although business across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefitted.  In fact, auto insurance – a $250 billion industry – stands to secure a windfall from COVID-19.

18.    As stated by the Center for Economic Justice Consumer Federation of America: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced

---

[1] Executive Order N-33-20 (Mar. 19, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf. (Last accessed April 2, 2021).
[2] *Id.* at para. 1.

their driving dramatically.  With fewer cars on the road, there were dramatically fewer accidents.  Fewer motor vehicle accidents mean fewer auto insurance claims."[3]

19.    Beginning in mid-March of 2020, the number of miles driven by individuals dropped dramatically because of COVID-19.  This includes the State of California.  Through the use of cell phone location data, it has been reported that vehicle miles traveled in California dropped significantly from their January 2020 average in March and April of 2020:[4]

| Date Range | Decrease in Miles Traveled |
| --- | --- |
| March 15 - March 21 | -53% |
| March 22 – March 28 | -72% |
| March 29 – April 4 | -74% |
| April 5 – April 11 | -77% |
| April 12 – April 12 | -74% |
| April 19 – April 25 | -71% |

Upon information and belief, decreases in pre-COVID miles traveled continued in May, June, and July 2020, and will continue for the foreseeable future.[5]

20.    Automobile accidents have also decreased.  According to an accident study comparing accidents in 2020 accident statistics to those of 2019, accident rates across California saw accident reductions as significant as 75%.[6]

21.    As a result of this dramatic decrease in driving and auto accidents, the rates set-and-thus premiums charged-by auto insurance companies during the COVID-19 pandemic, including GEICO, are unconscionably excessive.  Auto insurance rates, including those set by

---

[3] https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf (Last accessed April 2, 2021).
[4] *Id.* at 6-8.
[5] *Id.* at 2.
[6] https://www.prnewswire.com/news-releases/covid-19s-dramatic-impact-on-california-automobile-safety-301179928.html (Last accessed April 2, 2021).

GEICO, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data. Thus, as explained in the recent joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions insurers' rates covering time-frames from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then-current rates became excessive not just for new policyholders going forward, but also for existing policy holders whose premium was based on now-overstated expectation about insurance claims.[7]

22. The excessive premiums collected by GEICO during the COVID-19 pandemic have led to a substantial windfall in profits. It has been reported that for the first quarter of 2020 alone, GEICO generated a pretax underwriting gain of $884 million.[8] This was an increase of 27.8% from the same period in 2019. And according to its parent company, Berkshire Hathaway in the second quarter of 2020, GEICO generated pre-tax underwriting earnings of $2.1 billion, which was an increase of 434% compared to the second quarter of 2019.

23. GEICO's astonishing windfall is a direct result of the fact that its premiums during the relevant period are excessive and not based on an accurate assessment of risk since the pandemic began.

---

[7]. https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/geico-s-claims-frequency-falling-even-faster-than-q1-data-shows-58431662 (Last accessed April 5, 2021).

[8] *Id.*

6

24.     According to conservative calculations by the Center for Economic Justice and Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including GEICO, just for the time period from mid-March through the end of April 2020.[9]

25.     At all relevant times, GEICO has been aware of the excessive premiums that it has charged to and collected from policy holders in California as a result of the COVID-19 crisis. GEICO has likewise been aware of its excessive profits.  Despite this, GEICO has failed to adequately return these profits to its customers.

26.     In Spring 2020, GEICO announced the "GEICO Giveback."  Under the program, GEICO will give customers a 15% credit on their personal auto insurance premiums, but only if they are new customers, or existing customers who renew their policy during the applicable time period.  Specifically, the credit is given for six-month policies renewed or newly purchased between April 8, 2020 and October 8, 2020 and twelve-month policies renewed or newly purchased between April 8, 2020 and April 7, 2021.

27.     GEICO's credit program is inadequate to compensate for the excessive premiums that its customers have paid as a result of COVID-19.  For existing customers who renew their policies, the credit does not apply at all to excessive premiums that the customer paid on their previous policies.  And even with respect to new and renewal policies, the 15% credit is nowhere near the minimum 30% average refund benchmark that has been estimate as an adequate refund of premiums.

_____

[9] CEJ/CFA Report, at 12-13.

28.    With full knowledge that its refund program was inadequate, GEICO has falsely claimed to its customers that it is in fact providing substantial and full relief.  For example, on its website, GEICO falsely claims that "shelter in place laws have reduced driving, and we are passing *these savings* onto our auto, motorcycle, and RV customers."[10] (emphasis added).

29.    Not surprisingly, GEICO's credit program has been met with immediate criticism. On April 13, 2020, the Consumer Federation of America gave GEICO's program a "D-" grade.[11] The CEJ/CFA report explains that GEICO's program "fails to match the relief to the relevant premium and policy," "doesn't provide relief for current policyholders," "fails to credit consumers for the current premium that has become excessive," and it "wrongfully attempting to take credit for future – and in most cases distant future - rate reductions as if it were actually providing relief today to current policy holders."[12]

30.    GEICO also does not disclose the fact that its program compares unfavorably with the refund programs of all or nearly all other major auto insurers.

## FACTUAL ALLEGATIONS

31.    In September, 2020 Plaintiff purchased a renewal policy from GEICO for the time period beginning October 13, 2020 and ending on April 13, 2021.  Plaintiff paid $722 in premiums for that policy.

-------------------

[10] https://web.archive.org/web/20200813144017/https://www.geico.com/about/coronavirus/giveback/ (Last accessed April 5, 2021).
[11] https://consumerfed.org/press_release/report-card-to-date-on-the-6-5-billion-promised-to-auto-insurance-customers-as-people-drive-less-due-to-covid-19/ (Last accessed April 5, 2021).
[12] CEJ/CFA Report, at 16.

32.     During the time that Plaintiff was considering renewing her policy with GEICO, she received advertisements, emails and other information from GEICO representatives concerning the "Giveback."

33.     GEICO's insurance policies, including the policies of the Plaintiff and members of the putative class, contain the following provision:

3.     CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a party of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your state*.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) That *you* will cooperate with us in determining if this information is correct and complete.

(c) That *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

34.     This provision gives GEICO broad discretion to adjust premiums if the information on which those premiums is based changes or becomes incorrect.

35.     Plaintiff's policy described above was in effect during the time period during which most of the United States, including California, was significantly impacted by the global COVID-19 pandemic and during which stay-at-home orders, along with other measures and conditions,

caused a widespread and dramatic decrease in automobile use and traffic.  Despite this, GEICO did not do what it should have done in adequately adjusting and refunding Plaintiff.

36.     Upon information and belief, thousands of other policy holders in California have been injured by GEICO's policy and practice of charging and failing to refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

38.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> **The Class:**
>
> All California residents who had automobile, motorcycle, or RV insurance policies from GEICO in place and all California residents who purchased automobile, motorcycle or RV insurance policies from GEICO covering any portion of the time period from March 1, 2020 to the present.

39.     Excluded from the Class is GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

40.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

42.     The members of the Class are so numerous and geographically dispersed that individual joinder of all members is impracticable. Plaintiff is informed and believes that there are thousands of members of the Class, the precise number being unknown to Plaintiff, but such number being ascertainable from the Defendants' records. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

43.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

(a)     Whether Defendants engaged in the conduct alleged herein;

(b)     Whether Defendants have a common policy or practice of charging and failing to fully refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic;

(c)     Whether Defendants' insurance rates and premiums were excessive;

(d)     Whether Defendants violated the covenant of good faith and fair dealing;

(e)     Whether Defendants breached its contracts with Plaintiff and the other members of the Class by failing to fully refund excessive auto insurance premiums to policyholders due to the COVID-19 pandemic;

(f)     Whether Defendants were unjustly enriched by its charging and failure to fully refund excessive auto insurance premiums;

(g)    Whether Defendants falsely advertise that its refund program provides adequate refunds to its customers;

(h)    Whether Defendants' failure to provide adequate refunds to its customers is unlawful, unfair, and fraudulent;

(i)    Whether Defendants violated California consumer protection laws through its failure to provide adequate refunds to its customers and its failure to disclosure the inadequacy of its refunds;

(j)    Whether certification of the class proposed herein is appropriate under Fed. R. Civ. P. 23;

(k)    Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(l)    The amount and nature of relief to be awarded to Plaintiff and the other members of the Class.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

44.    Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

45.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of other members of the Class she seeks to represent. Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

46.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the

management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Class are relatively small compared to the burden and expense that would be required to individually litigation their claims against the Defendants, so it would be impracticable for members of the Class to individually seek redress for the Defendants' wrongful conduct.

47.     Even if members of the Class could afford individual litigation, the court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

48.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

### Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

49.     Defendants have acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

### CAUSES OF ACTION

**FOR A FIRST COLLECTIVE CAUSE OF ACTION
BREACH OF CONTRACT
(Plaintiff and Other Members of the Class)**

50.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

51.    Plaintiff brings this count on behalf of herself and other members of the Class.

52.    Plaintiff and the members of the putative class purchased insurance contracts from Defendants.

53.    Under California law, a covenant of good faith and fair dealing is implied into every contract.  A party is not permitted to do anything which will frustrate the other party's right to the benefits of the agreement.  And where a contract vests one party with discretion affecting the rights of another party, the covenant requires that the discretion be exercised in good faith.

54.    Defendants' insurance contracts give GEICO discretion to adjust premiums if the information on which those premiums are based changes or becomes incorrect.  That information changed and became incomplete and incorrect when the COVID-19 pandemic emptied California's roads.

55.    Defendants exercised their contractual discretion in bad faith by failing to issue adequate refunds of premiums.  It would not have been within the contemplation of the parties at the time of contracting that Defendants would fail to refund premiums in the fact of a global pandemic that drastically reduced driving in the state.

56.    Defendants' conduct frustrated Plaintiff's and the putative class's right to reasonably expected benefits of the bargain.  Those benefits include the reasonable expectation that insurance premiums will be based on an accurate assessment of risk, and that the insurer will treat its insureds honestly and fairly.

57.    Plaintiff and the members of the putative class have been injured as a direct and proximate result of Defendants' unlawful conduct.

**FOR A SEOCND COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiff and Other Members of the Class)**

58.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

59.    Plaintiff brings this count on behalf of herself and other members of the Class.

60.    Plaintiff brings this count in the alternative to count one.

61.    Plaintiff and other members of the Class paid substantial premiums on their personal auto insurance policies.

62.    Plaintiff and other members of the Class conferred a benefit on Defendants when they paid these premiums.

63.    Defendants have realized this benefit by accepting such payments.

64.    However, these premiums were unconsciously excessive.

65.    Defendants have retained this benefit, even though Defendants were aware of the excessive premiums that they charged to and collected from policyholders.

66.    As a result of the excessive premiums Defendants received a windfall.

67.    Defendants were enriched under circumstances that it cannot conscientiously retain its gain at Plaintiff's and the putative class's expense.

68.    Equity and good conscience require that the Defendants return to Plaintiff and other members of the Class a portion of the premiums paid.

69.    Plaintiff and the members of the putative class have been injured as a direct and proximate result of Defedants' unlawful conduct.

**FOR A THIRD COLLECTIVE CAUSE OF ACTION**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW ("FAL")**
**CAL. BUS. & PROF. CODE § 17500 *et seq*.**
**(Plaintiff and Other Members of the Class)**

70.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

71.     Plaintiff bring this count on behalf of herself and other members of the Class.

72.     The FAL prohibits any "untrue or misleading" statement in advertising, including any statement made "over the Internet," which is known to be untrue or misleading, or which by the exercise of reasonable care should be known to be untrue or misleading. Cal Bus. & Prof. Code § 17500.

73.     The FAL also prohibits omissions of material fact when the omissions are contrary to a representation made by the defendant, or where the defendant was obligated to disclose the omitted material facts.

74.     In advertising the "GEICO Giveback," Defendants made untrue and misleading statements, including the statement that "shelter in place laws have reduced driving, and we are passing these savings on our auto, motorcycle, and RV customers."  Further Defendants failed to disclose the fact that the "GEICO Giveback" did not, in fact, pass the company's savings on to its customers, given the amount of its excessive profits caused by COVID-19 and the fact that its premiums are not based on an accurate assessment of risk during COVID-19.  These omissions were directly contrary to Defendants' representation that it was passing the savings related to reduced driving on to its customers.

75.     Defendants had full and exclusive knowledge of each material fact that it omitted to disclose, and the company actively concealed those facts.  Further, Plaintiff did not know the omitted material facts and, by the nature of those facts, Plaintiff could have not discovered the omitted facts.

76.     Defendants intended for Plaintiff and the members of the putative class to rely on Defendants' misrepresentations and omissions of material facts by remaining customers of Defendants, renewing existing insurance policies from Defendants, and buying new insurance policies from Defendants.  And a reasonable consumer in Plaintiff's position would have so relied on Defendants' misrepresentations and omissions and would be likely to have been deceived.

77.     Defendants' conduct, as described herein, violated the FAL.

78.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of Defendants' deceptive conduct in violation of FAL.  Plaintiff and the members of the putative class paid premiums to Defendants and did not have those premiums refunded, and they purchased, renewed, and did not cancel their policies, as a result of Defendants' deceptive statements and omissions.

79.     Through its deceptive practices, Defendants have improperly obtained and continue to improperly obtain and retain money from Plaintiff and the members of the putative class.

80.     Plaintiff requests that this Court grant the relief enumerated below.  Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
### Cal. Bus. & Prof. Code § 17200 *et seq.*
### (Plaintiff and Other Members of the Class)

81.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

82.     Plaintiff brings this count on behalf of herself and other members of the Class.

83.     Plaintiff and Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

84.    The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

85.    By committing the acts and practices alleged herein, Defendants have engaged in unlawful, unfair and fraudulent business acts and practices, as well as unfair, deceptive, untrue and misleading advertising, in violation of the UCL.

86.    **Unlawful Conduct:** Defendants have violated the UCL's proscription against engaging in unlawful conduct.  More specifically, Defendants have violated the FAL as alleged in the above counts.

87.    **Unfair Conduct:** A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm of the alleged victims.  Defendants have violated the UCL's proscription against unfair business practices by, among other things:

a.    failing to fully refund premiums with full knowledge of the amount and extend of their excess and the fact that they are not based on accurate assessment of risk;

b.    failing to refund premiums to the consumers who initially paid those premiums, and instead giving a credit only for new or renewal business, thereby intentionally using the global COVID-19 pandemic as a means to gain new business and obtain unfair economic advantage;

c.    falsely claiming to its customers that it is providing substantial and full relief through its "Giveback" program and failing to disclose that the program does not, in fact, provide full relief; and

d.    failing to disclose the fact that it is earning excessive profits, or the amount of those profits.

88.    There is no societal benefit from Defendants' conduct-only harm to consumers. Defendants have engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

89.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

90.    **Fraudulent Conduct:** A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

91.    Defendants' acts and practices constitute fraudulent business acts or practices because they have deceived Plaintiff and are highly likely to deceive members of the public.

92.    In advertising the "GEICO Giveback," Defendants made untrue and misleading statements, including the statement that "shelter in place laws have reduced driving, and we are passing these savings onto our auto, motorcycle, and RV customers." Further Defendants failed to disclose the fact that the "GEICO Giveback" did not, in fact, pass the company's savings on to its customers, given the amount of its excessive profits caused by COVID-19 and the fact that its premiums are not based on an accurate assessment of risk during COVID-19. These omissions were directly contrary to Defendants' representation that it was passing the savings related to reduced driving onto its customers.

93.    Plaintiff and the members of the putative class paid premiums to Defendants and did not have those premiums adequately refunded, and they purchased, renewed, and did not cancel their policies, as a result of Defendants' fraudulent conduct.

94.     **Unfair, Deceptive, Untrue, or Misleading Advertising:** Defendants' advertising of its "GEICO Giveback" constitutes unfair, deceptive, untrue or misleading advertising under the UCL.

95.     Advertising is misleading under the UCL if members of the public are likely to be deceived.

96.     In advertising the "GEICO Giveback," Defendants made untrue and misleading statements, including the statement that "shelter in place laws have reduced driving, and we are passing these savings onto our auto, motorcycle, and RV customers."  Further Defendants failed to disclose the fact that the "GEICO Giveback" did not, in fact, pass the company's savings onto its customers, given the amount of its excessive profits caused by COVID-19 and the fact that its premiums are not based on an accurate assessment of risk during COVID-19.  These omissions were directly contrary to Defendants' representation that it was passing the savings related to reduced driving onto its customers.

97.     These statements and omissions were likely to deceive the public.

98.     Plaintiff and the members of the putative class paid premiums to Defendants and did not have those premiums adequately refunded and they purchased, renewed, and did not cancel their policies, as a result of Defendants' unfair and deceptive conduct.

99.     The injury caused by Defendants' failure to provide adequate refunds is substantial in light of very conservative calculations that a 30% minimum average premium refund to would be required to correct the unfair windfall just for the time period from mid-March through the end of April 2020.

100.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of Defendants' conduct in violation of the UCL.

101.    Through its practices, Defendants have improperly obtained and continue to improperly obtain and retain money from Plaintiff and the members of the putative class.

102.    Plaintiff requests that this Court grant the relief enumerated below.  Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, pray for judgment in her favor and against Defendants as follows:

A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendants are financially responsible for notifying the members of the Class about the pendency of this action;

C. Declaring that Defendants wrongfully kept monies paid by means of excessive premiums;

D. Requiring that Defendants disgorge amounts wrongfully obtained for the excessive premiums;

E. Awarding damages in an amount to be determined at trial, including compensatory damages, consequential damages, treble damages, punitive damages, and any other damages provided under relevant laws;

F. Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from retaining the different between the excess premiums and the reasonable premium;

G. Scheduling a trial by jury in this action;

H. Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

I. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

J. Awarding such other and further relief as may be just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: April 8, 2021

By:    <u>/s/ *John C. Bohren*</u>
John C. Bohren
CA State Bar No. 295292
**Bohren Law APC**
501 W. Broadway Suite 800
San Diego, CA 92101
Mailing Address:
PO Box 12174
San Diego CA 92112
Tel: (619) 433-2803
Email: yanni@bohrenlaw.com

Eric M. Poulin
CA State Bar No. 298476
Roy T. Willey, IV (*pro hac vice forthcoming*)
Blake G. Abbott (*pro hac vice forthcoming*)
**Anastopoulo Law Firm, LLC**
32 Ann Street
Charleston, SC 29403
P: (843) 614-8888
F: (843) 494-5536
Email: eric@akimlawfirm.com
      roy@akimlawfirm.com
      blake@akimlawfirm.com

**Attorneys for Plaintiff and the Proposed Class**